IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Jesse T., | ) |
|     Plaintiff, | ) ) ) |
|     v. | ) Case No.: 20-cv-50076 ) ) Magistrate Judge Margaret J. Schneider |
| Kilolo Kijakazi, Commissioner of Social Security,[1] | ) ) ) |
|     Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

    Plaintiff's motion for summary judgment, Dkt. 12, is granted, the Commissioner's motion for summary judgment, Dkt. 20, is denied, and the decision of the ALJ is reversed and remanded.

**BACKGROUND**

    A. Procedural History

    Plaintiff Jesse T. ("Plaintiff") filed an application for supplemental social security income benefits on November 21, 2014. R. 409-16. Her application was denied initially on April 23, 2015 and upon reconsideration on August 15, 2015. R. 253, 259. Following a hearing held on February 27, 2017, Administrative Law Judge ("ALJ") Robert Asbille issued an opinion denying benefits on May 30, 2017. R. 233-47. Plaintiff appealed the decision to the Appeals Council, and on February 28, 2018 the Appeals Council remanded the case, mainly because the ALJ did not give proper consideration to Plaintiff's residual functional capacity ("RFC"). R. 250.

    On remand, the same ALJ held a second hearing on February 19, 2019. R. 29-60. Ann Monis, Psy.D., testified as an impartial medical expert. *Id.* On March 6, 2019, the ALJ issued his written opinion denying Plaintiff's claims for supplemental security income. R. 10-28. Plaintiff appealed the decision to the Appeals Council, which denied Plaintiff's request for review. R. 1-6. Plaintiff now seeks judicial review of the ALJ's March 6, 2019 decision, which stands as the final decision of the Commissioner. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

    B. Medical History

    Plaintiff has a medical history of lower extremity impairments as well as carpal tunnel. As a result of a slip and fall accident, on August 30, 2014, Plaintiff fractured her right tibia and underwent open reduction with internal fixation. R. 646. As of September 9, 2014, orthopedist Kevin Draxinger noted that the surgical wound appeared to be well-healed, Plaintiff no longer

---

[1] Kilolo Kijakazi has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).

wore the knee immobilizer, and her pain was fairly well controlled with hydrocodone. *Id.* In October 2014, she started physical therapy. R. 604. As of October 22, 2014, she was wearing a long leg knee brace to walk and her physical therapist, Pamela J. Finley, PTA, noted that she had some improved knee flexion, although overall it was still decreased.

On January 22, 2015, Plaintiff went to the emergency room due to knee pain. R. 725. She stated that while walking in her kitchen, she felt the screws from the surgery were coming loose in her knee. *Id*. Ultimately on June 17, 2015, the hardware was removed. R. 781. In October 2015, Plaintiff underwent arthroscopy. R. 931. As of November 10, 2015, Dr. Draxinger noted that she was doing a little better bending her knee but that she still had some slight decreased range of motion. R. 932. On December 8, 2015, Dr. Draxinger noted that on physical exam Plaintiff's range of motion was improving, but that she was still walking with a cane and taking pain medication. R. 934.

Thereafter, on December 13, 2016, she had a total knee replacement followed by 4 weeks of physical therapy. R. 935, 824-893. As of December 29, 2016, her physical therapist noted that she was continuing to use a walker, and that she had a very stiffened knee and heel-toe pattern. R. 882. On January 24, 2017, Plaintiff had an additional surgery on her knee, and she was again prescribed physical therapy. R. 1019, 1026. As of February 20, 2017, physical therapy records show that Plaintiff continued to have difficulty with knee flexion, and she needed continued therapy to increase her knee strength and overall function. R. 1034. On February 21, 2017, Plaintiff reported to Dr. Dammann Gregory that she continued to experience swelling and pain, and he recommended continuing physical therapy for an additional four weeks. R. 1058-59.

On September 5, 2017, Plaintiff underwent another surgery of the right knee. R. 1073-74. Dr. Andrew Blint noted that by this time she had exhausted physical therapy, and that he indicated her for right knee surgery. R. 1073. On September 12, 2017, Dr. Blint recommended aggressive physical therapy, and noted that the knee problem would likely recur if the patient did not put in effort to bend her knee. R. 1076. On September 26, 2017, Plaintiff followed up with Dr. Blint again, who noted that she had made very mild improvement in her range of motion. R. 1079-80. By October 17, 2017, Dr. Blint found that that swelling might have been limiting her range of motion, and stated that if it did not improve, he would refer her to an arthroplasty specialist. R. 1082. As of November 17, 2017, Dr. Blint noted that the knee had failed both operative and non-operative measures, and he referred her to Dr. Howard Weiss for genicular nerve blockade with radiofrequency ablation. R. 1085.

On January 9, 2018, Dr. Blint again articulated that "the patient has failed pretty much all measures from conservative to surgical," and recommended that she receive an opinion from UW Madison regarding arthrofibrosis and chronic pain. R. 1088. Records from a January 11, 2018 visit to Dr. April Moore, who appears to be Plaintiff's family practitioner, show that Plaintiff had symptoms from a recent nerve block injection with Dr. Weiss. R. 1174-75.[2] On March 5, 2018 she was seen by Dr. Moore to be prescribed Norco to treat knee pain she described at a level 9 out of 10. R. 1180. On October 9, 2018, Dr. Blint assessed Plaintiff as having "chronic pain [and] significant functional limitations after right total knee arthroplasty by an outside surgeon." Dr. Blint further stated that she needed to seek care from a joint replacement specialist. R. 1207.

---

[2] The record does not contain medical records from treatment by Dr. Weiss.

2

At a January 11, 2018 appointment with Dr. Moore, Plaintiff complained of paresthesia and pain of both upper extremities and Dr. Moore indicated she may have a "component of carpal tunnel" and had her try wrist braces. R. 1174-75. On February 14, 2018, Plaintiff was assessed by Dr. Blint with bilateral hand pain, and signs and symptoms of carpal tunnel syndrome, and he recommended that she obtain EMG nerve conduction study testing. R. 1091. As of May 22, 2018, Dr. Blint diagnosed her with carpal tunnel syndrome by physical examination and electrodiagnostic testing, and he recommended surgery based on the failure of conservative measures including use of a brace, anti-inflammatory measures, and activity modification. R. 1204-05.

On November 10, 2018, Plaintiff underwent an internal medicine consultative exam by Dr. Afiz Taiwo. R. 1219-21. He noted that she was able to get on and off the exam table with difficulty, that she used a cane to walk 50 feet, and was unable to perform toe/heel walk. R. 1221. In his notes, Dr. Taiwo also indicated that Plaintiff was unable to walk on toes, walk on heels, squat and rise, or tandem walk. R. 1223. Dr. Taiwo found that she had a history of right tibia fracture leading to "gait dysfunction". R. 1222.

Plaintiff also has a history of depression and anxiety. In October 2017, Plaintiff was found to have depressive feelings, anhedonia, decreased appetite, feelings of guilt, and repetitive and intrusive thoughts about her childhood traumas. R. 1068. In November 2018, Plaintiff underwent a clinical psychology consultative examination and psychologist John Zagotta diagnosed her with a persistent depressive disorder. R. 1215.

At the ALJ hearing on February 19, 2019, Plaintiff testified that she had trouble walking. R. 37. She stated that she would experience a lot of pain with walking and that could not bend her knee. *Id.* Plaintiff further stated that it had gotten to the point where she could hardly walk at all, and that she used a cane for assistance. R. 37-38. She also testified that she was unable to do housework due to her knee pain, she had trouble sleeping, and that her aunt and her daughter would wash her clothes for her and do her food shopping. R. 38. In addition, she stated that the farthest she had walked in a month was a half block, and that she typically spent her days on the couch elevating her leg. R. 39. She also stated that she had trouble sitting for extended periods because she had to elevate her leg due to her knee pain. R. 39-40. She claimed that she had felt depressed for two years as well, since her mother had passed away. R. 42.

C. The ALJ's Decision

In his decision denying Plaintiff's claim for benefits, the ALJ went through the five-step analysis for determining whether a person is disabled under the Social Security Act. *See* 20 C.F.R. § 416.920(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity. R. 15. At step two, the ALJ found that Plaintiff had the following severe impairments: bilateral knee arthritis, obesity, anxiety, and depression. *Id.* At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, paying particular attention to listings 1.02A, 1.03, 12.04, and 123.06. R. 18.

Prior to step four, the ALJ determined that Plaintiff had the RFC to perform sedentary work except that she could lift or carry less than 10 pounds frequently and 10 pounds occasionally; could stand or walk for two hours and sit for 6 hours in an 8-hour day; could never climb ladders, ropes, or scaffolds; could occasionally perform postural activities; could understand, remember, and carry out simple instructions; could not perform at hourly quotas but could do end of day quotas; and could adapt to routine changes in the work environment. R. 19. At step four, the ALJ found that Plaintiff had no past relevant work. R. 20. Finally, at step five, the ALJ found there were jobs that existed in significant numbers in the national economy that she could have performed. R. 20. Because of these findings, the ALJ found that Plaintiff was not disabled. R. 21.

## STANDARD OF REVIEW

The reviewing court reviews the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at * 5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id.* (quoting *Biestek v. Berryhill*, __U.S.__, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at * 7 (N.D. Ill. Feb. 27, 2013).

The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted). Additionally, "[a]n ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)).

## DISCUSSION

Plaintiff argues that remand is proper because the ALJ erred in three ways: (1) the listings analysis, (2) the RFC assessment, and (3) the treating physician rule. Because the Court finds error with the ALJ's listings analysis, the ALJ's decision is reversed and remanded on that basis. The remaining two arguments need not be addressed.

First, Plaintiff challenges the ALJ's finding that Plaintiff's impairments did not meet or medically equal listing 1.02A. She argues that the ALJ failed to evaluate the evidence and should have provided a medical expert to facilitate meaningful judicial review. "In considering whether

4

a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (internal citation omitted). The listing at issue here (1.02A) requires the involvement of a single lower extremity major peripheral weight-bearing joint resulting in inability to ambulate effectively, meaning the ability to sustain "a reasonable walking pace over a sufficient distance to carry out activities of daily living," including traveling without the need of a companion. 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.00B2b.

The ALJ provided the following explanation for why Plaintiff did not meet this listing: "The claimant may require use of an assistive device, but she is able to perform all necessary activities of daily living. Thus, the listing is not met." R. 17. This reasoning is only two sentences and is a barebones conclusion. Plaintiff argues that this discussion was inadequate. The ALJ did not explain how he interpreted 1.02A or what evidence he relied on. In short, there was no analysis of the record evidence to support the ALJ's conclusion. This is "the very type of perfunctory analysis" the Seventh Circuit has "repeatedly found inadequate to dismiss an impairment as not meeting or equaling a Listing." *Minnick*, 775 F.3d at 935 (7th Cir. 2015) (internal citation omitted).

In its response brief, the Commissioner argues that the ALJ expressly found that the evidence did not establish the inability to ambulate effectively. The listings define effective ambulation as follows:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(2). However, the ALJ's decision did not actually analyze whether Plaintiff could ambulate effectively—at step three or anywhere else in the ALJ's analysis. *Zellweger v. Saul*, 984 F.3d 1251, 1254-55 (7th Cir. 2021) (A reviewing court can consider an "ALJ's step-three determination in light of elaboration and analysis appearing elsewhere in the decision.") Under the *Chenery* doctrine, this Court must confine its review to the grounds on which the ALJ made his finding. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (internal citation omitted) ("The *Chenery* doctrine 'provides an assurance that the object of the court's review is the product of a body or official to whom Congress delegated authority. That constraint in turn polices the conditions for judicial deference to agency action.'"). The

5

Commissioner further argues that the ALJ relied on Dr. Taiwo's finding that plaintiff needed a cane to assist ambulation. However, Dr. Taiwo only stated that Plaintiff needed a cane to assist ambulation; he did not opine as to whether Plaintiff would be able to carry out the activities of daily living. Meanwhile, as the ALJ acknowledged, Plaintiff testified that she had severe pain which limited her ability to perform household activities, her aunt washed clothes for her, food shopping was done by friends or her daughter, her knee was swollen and in constant pain, she had difficulty if she stood, or sat for long periods of time, and that she needed to keep her leg elevated. R. 19. The ALJ's decision recited this information but declined to credit it, finding that it was "not entirely consistent with the medical and other evidence." *Id.* Yet, the ALJ did not analyze or explain any of this medical or other evidence that led him to this determination. As described above, the record is replete with evidence that Plaintiff was dealing with significant knee pain that her doctors credited and treated. Nonetheless, the adequacy of the ALJ's credibility determination is not at issue at this point. The Court points this out only because this is the only part of the ALJ's decision discussing Plaintiff's physical condition that could have been the basis for the ALJ's determination that Plaintiff "is able to perform all necessary activities of daily living." This perfunctory analysis is inadequate and requires a remand.

Having found that a remand is warranted on this first argument, the Court concludes that it is not necessary to evaluate the remaining arguments. The Court notes, however, that on remand, the ALJ should provide a more in-depth evaluation of Plaintiff's RFC supported by the evidence of record. In addition, the ALJ was not clear on how Plaintiff's mental limitations impacted the residual functional capacity. On remand from the Appeals Council, the ALJ was directed to assess how Plaintiff's limitation in interacting with others affected her ability to deal, specifically, with the public, co-workers, or supervisors. R. 250. However, the ALJ did not address this aspect of Plaintiff's limitation. On remand, the ALJ should examine this issue more closely.

## CONCLUSION

For these reasons, Plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the decision of the ALJ is reversed and remanded for further consideration.

Date: November 17, 2021            ENTER:

*Margaret J. Schneider*
United States Magistrate Judge